1
2
3
4
5
6
7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   EUGENE DAVIDOVICH, an individual;              CASE NO. 11cv2675 WQH-NLS
     DAVINA LYNCH, an individual; and
12   JOHN KENNEY, an individual,                    ORDER

13                                    Plaintiffs,

14              vs.

15   CITY OF SAN DIEGO,

16                                   Defendant.

HAYES, Judge:

17
18           The matter before the Court is the Ex Parte Application for Temporary Restraining

19   Order filed by Plaintiffs Eugene Davidovich, Davina Lynch, and John Kenney.  (ECF No. 29).

     **I.      Background**
20
21           On November 16, 2011, Plaintiffs Eugene Davidovich, Davina Lynch, and John Kenney

22   initiated this action by filing a "Complaint for Temporary Restraining Order, Preliminary

     Injunction, Permanent Injunction and Declaratory Relief" against the City of San Diego.  (ECF
23
24   No. 1).  The Complaint asserts two claims titled: "Injunctive Relief" and "Declaratory Relief"

25   and alleges that San Diego Municipal Code section 54.0110 titled "Unauthorized

26   Encroachments Prohibited" which provides: "It is unlawful for any person to erect, place,

     allow to remain, construct, establish, plant, or maintain any vegetation or object on any public
27
28   street, alley, sidewalk, highway, or other public property or public right-of-way...." is

     unconstitutional.  *Id*. at 2-3.  Plaintiffs seek "a declaration that [San Diego Municipal Code]

1  section 54.0110 is void for vagueness and overbreadth" and an injunction "prohibiting

2  Defendant and its agents or employees from enforcing [San Diego Municipal Code] section

3  54.0110." *Id.* at 3-4.  The declarations attached to the Complaint state that Plaintiffs are

4  members of the Occupy San Diego movement, which is "a protest in solidarity with the

5  Occupy Wall Street movement for economic and social justice" being held at the Civic Center

6  Plaza in downtown San Diego.  (ECF No. 1-1 at 2; 1-5 at 1; 1-6 at 1).   Plaintiffs allege that

7  the "police sometimes choose to enforce section 54.0110 very strictly, requiring that no one

8  entering Civic Center Plaza place any object on the ground, particularly when members of the

9  protest group 'Occupy San Diego' enter the Plaza. On other occasions or with respect to other

10  individuals, the police allow objects to be placed on the ground."  (ECF No. 1 at 3).  Plaintiffs

11  allege that the "ordinance has a chilling effect on free expression ...."  *Id.*

12      On November 17, 2011, Plaintiffs filed an Ex Parte Application for Temporary

13  Restraining Order asserting a facial challenge to San Diego Municipal Code section 54.0110.

14  (ECF No. 7).  On November 21, 2011, the Court heard oral argument on the Ex Parte

15  Application for Temporary Restraining Order.  On December 1, 2011, the Court denied the

16  Ex Parte Application for Temporary Restraining Order.  (ECF No. 25).  The Court stated:

17      In this case, the prohibition against unauthorized encroachments in San
       Diego Municipal Code section 54.0110 is content neutral because it does
18      not single out any type of speech or provide differential treatment based
       on the idea expressed.  San Diego Municipal Code section 54.0110
19      serves significant government interests in protecting the public's health,
       safety, and welfare; maintaining public property; and ensuring that the
20      public space is free of obstructions and is available for the use and
       enjoyment of members of the public.  San Diego Municipal Code
21      section 54.0110 is narrowly tailored because it is limited to proscribing
       intrusion upon the maintenance, use, and enjoyment of public space.
22      San Diego Municipal Code section 54.0110 allows ample alternative
       channels for communication and does not preclude Plaintiffs from
23      communicating their message.

24          Based on the record, the Court concludes that San Diego
       Municipal Code section 54.0110 is a content neutral, reasonable time,
25      place, and manner restriction which is narrowly tailored to serve a
       significant governmental interest and leaves open ample alternative
26      channels for communication.

27      ...

28      San Diego Municipal Code section 54.0110 has the plainly legitimate
       sweep of protecting the public's health, safety and welfare; maintaining
       public property; and ensuring that the public space is free of obstructions

and available for the use and enjoyment of members of the public.  The conduct targeted by the ordinance relates to the maintenance, use, and enjoyment of public space and is not constitutionally protected.  To the extent that the ordinance may restrict expressive conduct, Plaintiffs have failed to show that there are a substantial number of instances in which the [ordinance] cannot be applied constitutionally in relation to its plainly legitimate sweep.

...

The need for definiteness is present in this case because the Court has presumed that the ordinance implicates constitutionally protected conduct. When considering the ordinary meaning of the terms encroach, erect, place, remain, construct, establish, plant, and maintain, as well as their use in conjunction with each other, the ordinance plainly prohibits individuals from using vegetation or objects to interfere with the maintenance, use, and enjoyment of public property. The ordinance makes it unlawful for a person to "erect, place, allow to remain, construct, establish, plant, or maintain any vegetation or object" upon public property in order to advance substantial government interests in protecting the public's health, safety and welfare; maintaining public property; and ensuring that the public space is free of obstructions and is available for the use and enjoyment of members of the public. S.D. Mun. Code § 54.0110. The ordinance proscribes easily identifiable conduct which directly advances the public interest. The Court concludes that the ordinance provides adequate guidelines to govern law enforcement and to avoid the potential for arbitrarily suppressing First Amendment liberties.

*Id*. at 5-6, 8, 10-11 (quotations and citations omitted).

On January 18, 2012, Plaintiffs filed an Ex Parte Application for Temporary Restraining Order asserting an as-applied challenge to San Diego Municipal Code section 54.0110. (ECF No. 29).  Plaintiffs seek a temporary restraining order enjoining the City of San Diego "from engaging in, committing, or performing, directly or indirectly, any and all of the following acts: arresting or threatening the arrest of [Plaintiffs] or any Occupy San Diego demonstrator under San Diego Municipal Code section 54.0110 for temporary placement of personal belongings, signs, folding tables, chairs, or other personal possessions not constituting permanent encroachment on city property."  (Proposed Order at 2).

On January 25, 2012, Defendant filed an Opposition.  (ECF No. 34).  On January 30, 2012, Plaintiff filed a Reply.  (ECF No. 35).  On February 9, 2012, the Court heard oral argument.

**II.    Discussion**

When the nonmovant has received notice, as here, the standard for issuing a temporary

restraining order is the same as that for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted).  To obtain preliminary injunctive relief, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction....").

### A.    Success on the Merits

Plaintiffs contend that "since the December 1 Order, ... various San Diego Police officers have told demonstrators they may not set any objects down [in the Civic Center Plaza]."  (ECF No. 29-1 at 2).  Plaintiffs contend that "[t]here have also been arrests under SDMC section 54.0110 for sitting in a folding chair and lying on a tarp...."  *Id*.  Plaintiffs contend that they are "arbitrarily being told they cannot set down objects or they will be arrested." *Id.* at 3.  Plaintiffs contend: "Because of the potential for construing section 54.0110 in an overbroad manner, Plaintiffs seek an order to prevent the arbitrary suppression of free speech and personal liberties that occurs when an individual police officer does construe the ordinance in an overly broad and impermissible manner." *Id*.

Plaintiffs have submitted the Declaration of John Kenney who states that on December 9, 2011, at 11:30 p.m. "several [San Diego Police Officers] came over and asked [Kenney] if [he] was the owner of a tarp on the ground." (ECF No. 29-2 at 1).  Keney states that he "replied that [he] was not the owner ...." *Id.*  Kenney states that a Sergeant "asked [Kenney] to get off of the tarp [that was on the ground in the Civic Center Plaza], as he felt it was 'encroaching.' [Kenney] began to move over. But then [the Sergeant] said, no, moving off of the tarp was not enough, [Kenney] also had to move entirely out of the area." *Id.*  Kenney

states that he "said [he] was just trying to sleep, but that [he] would move over. [The Sergeant] told [Kenney] again to entirely leave the area." *Id*. at 2. Kenney states that "[a]gain, [he said that he] was just trying to sleep, but that [he] would move over." *Id*. Kenney states that he was arrested and charged with violation of San Diego Municipal Code section 54.0110. Kenney states that on January 6, 2012, "Occupy member Mike Garcia was arrested and charged with violating section 54.0110 for sitting in the same folding chair he had been sitting in daily for weeks at Civic Center Plaza."[1] *Id*. Kenney states that the San Diego Police have also confiscated a "Christmas tree, a folding chair, a table for registering voters, and an American flag ..." from the Civic Center Plaza. *Id*. Plaintiffs have submitted additional declarations asserting that members of the Occupy San Diego protest have been threatened with arrest pursuant to San Diego Municipal Code section 54.0110 for placing cardboard signs on the ground and for setting a wooden soapbox inscribed with the words 'Free Speech' unattended in certain areas.

Defendant contends that San Diego Municipal Code section 54.0110 has been found to be a constitutional, content neutral, reasonable time, place, and manner restriction which is narrowly tailored serve a significant government interest and leaves open ample alternative channels for communication. Defendant contends that San Diego Municipal Code section 54.0110 has been in effect since 1993 and Plaintiffs have failed to show a pattern of impermissible enforcement. Defendant contends that San Diego Municipal Code section 54.0110 "is being enforced to prevent any individuals including Plaintiffs, other members of Occupy San Diego, and anyone else in the Plaza area and elsewhere who may or may not have any affiliation with Occupy San Diego, from setting up camp, leaving their personal property around in Civic Center Plaza and other public areas, and otherwise obstructing the free use and enjoyment of the Plaza, and the City's other public properties and right-of-ways, by all." (ECF No. 34 at 8). Defendant contends that the enforcement of San Diego Municipal Code section 54.0110 has "nothing to do with their message(s) or the

---

[1] Plaintiff Kenney describes what happened to Mike Garcia in Plaintiff Kenney's Declaration. Mike Garcia has not submitted a declaration in this case.

fact that they are demonstrating .... [enforcement] has been to prevent the Occupy San Diego group members from re-establishing the unsafe and unsanitary 'camp' they have set up at least three times since October 2011...." *Id.* at 9.

Defendant has submitted the Declaration of Captain Mark Jones who states that "[The San Diego Police Department] has enforced [section 54.0110] for years, well before the Occupy movement, and enforces the ordinance elsewhere within the City with respect to individuals having no relationship to Occupy [San Diego]." (ECF No. 34-1 at 3). Captain Jones states that since October 2011, members of Occupy San Diego have "repeatedly cluttered Civic Center Plaza with items that indicated an intent to remain, including camping equipment, tents, canopies, tarps, sleeping bags, tables, chairs, food and beverage stations, cooking equipment (such as propane-fired grills), refrigeration units, exercise equipment, luggage, and a garden." *Id.* Captain Jones states that the encampments have been unsanitary and the "[San Diego Police Department has] received ... reports of petty theft, vandalism, drug-use, public intoxication, lewd and disorderly conduct, physical and sexual assault, and threatening behavior towards vendors ...." Decl. Captain Mark Jones ECF No. 18-1 at 3. Captain Jones states that the City of San Diego has incurred significant costs to clean, sterilize, and repair the Civic Center Plaza area as a result of the Occupy movement. Decl. Captain Mark Jones ECF No. 34-1 at 3. Captain Jones states that "[t]hroughout the Occupy [San Diego] protest ... protestors have been permitted to , and consistently have, exercised a wide range of speech activities ... such as marching, demonstrating, carrying signs and symbols, shouting and chanting, assembling, and meeting, without interference from [the San Diego Police Department]." *Id.*

The Court has previously found that San Diego Municipal Code section 54.0110 is a content neutral, reasonable time, place, and manner restriction which is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels for communication. (ECF No. 25); *see also Clark v. Community for Creative Non-Violence,* 468 U.S. 288296 (1984) (finding that restricting camping and sleeping on public property was a reasonable time, place, and manner restriction and that "using these areas as living

1   accommodations would be totally inimical to [the Government's substantial interest in

2   maintaining the parks in an attractive and intact condition, readily the public]....");

3   *Lubavitch Chabad House, Inc. v. City of Chicago,* 917 F.2d 341, 347 (7th Cir. 1990)

4   (holding that there is no "private constitutional right to erect a structure on public property.

5   If there were, our traditional public forums, such as our public parks, would be cluttered

6   with all manner of structures.").  However, the application of an ordinance that is

7   constitutional on its face may nonetheless violate an individual's First Amendment rights.

8   *See Hoye v. City of Oakland*, 653 F.3d 835, 854 (9th Cir. 2011) (stating that court must

9   "make doctrinal space for challenges to the content-discriminatory enforcement of

10   content-neutral rules....").

11         A party presents an as-applied challenge to the constitutionality of an ordinance

12   when the party "contends that the law is unconstitutional as applied to the litigant's

13   particular speech activity, even though the law may be capable of valid application to

14   others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).  "A successful

15   as-applied challenge does not render the law itself invalid but only the particular

16   application of the law." *Foti*, 146 F.3d at 635.

17         There are two types of as-applied challenges to the constitutionality of an ordinance:

18   a challenge based on selective enforcement and a paradigmatic challenge.  In a selective

19   enforcement challenge, an ordinance may be "neutral and constitutional ... [but it] has been

20   enforced selectively in a viewpoint discriminatory way." *Hoye*, 653 F.3d at 854 (citation

21   omitted).  "[P]laintiffs are generally required to show the existence of an unconstitutional

22   policy by extrapolating from a series of enforcement actions ... . [which] demonstrate[s]

23   that the municipality is enforcing against them a rule that is distinct from the

24   constitutionally valid enactment." *Id*. at 855.  In a paradigmatic challenge, the plaintiff

25   "argu[es] that it is unconstitutional to apply the ordinance to him because, given all the

26   circumstances, his ability to communicate is unduly constricted." *Id*. at 857.  "[W]hether

27   the ordinance is unconstitutionally restricting [plaintiff's] speech is ultimately a causation

28   question based on the particular facts: Does the ordinance as applied to the actual

1   circumstances ... foreclose ample alternative channels of communication?"  *Id.* at 858-59.

2        In this case, San Diego Municipal Code section 54.0110 proscribes intrusion upon

3   the maintenance, use, and enjoyment of public space.  San Diego Municipal Code section

4   54.0110 allows ample alternative channels for communication because it is content-neutral

5   and it and does not preclude Plaintiffs from communicating their message.  Plaintiffs have

6   submitted evidence of only two instances in which individuals were cited for violation of

7   San Diego Municipal Code section 54.0110.  Plaintiff Kenney was cited for violation of

8   San Diego Municipal Code section 54.0110 because he was sleeping on a tarp in the Civic

9   Center Plaza.  *See* (ECF No. 29-2 at 1).  Plaintiff Kenney reports that another individual

10  was cited for violation of San Diego Municipal Code section 54.0110 because that

11  individual sat "in the same folding chair he had been sitting in daily for weeks at Civic

12  Center Plaza."  *Id.*  Plaintiffs have also submitted evidence that San Diego Police Officers

13  have warned Occupy San Diego members not to leave their personal belongings and protest

14  materials unattended in certain areas of the Civic Center Plaza.

15       The Court finds that both of the instances in which individual were cited for

16  violation of San Diego Municipal Code section 54.0110 involved reasonable application of

17  the ordinance.  Accordingly, the enforcement actions do not demonstrate that the Defendant

18  is enforcing San Diego Municipal Code section 54.0110 selectively in a viewpoint

19  discriminatory way.  The Court concludes that Plaintiffs have failed show that the City of

20  San Diego is enforcing San Diego Municipal Code section 54.0110 against Occupy San

21  Diego members due to viewpoint discrimination.

22       The Court finds that there is no evidence that the warnings and enforcement of San

23  Diego Municipal Code section 54.0110 have prevented Plaintiffs from marching,

24  demonstrating, carrying signs and symbols, shouting and chanting, assembling, and

25  meeting.  The Court finds that warnings and enforcement of San Diego Municipal Code

26  section 54.0110 protects the maintenance, use, and enjoyment of public space.

27  Accordingly, the warnings and enforcement of San Diego Municipal Code section 54.0110

28  does not unduly constrict Plaintiffs' ability to communicate their message.  The Court

1   concludes that Plaintiffs have failed to show that, under all of the circumstances, Plaintiffs'

2   ability to communicate their message is unduly constricted.

3         The Court concludes that Plaintiffs have failed to show that they are likely to

4   succeed on the merits of their challenge to San Diego Municipal Code section 54.0110.

5   **B.      Irreparable Injury, Balancing of Hardships, Public Interest**

6         "When ... a party has not shown any chance of success on the merits, no further

7   determination of irreparable harm or balancing of hardships is necessary." *Global*

8   *Horizons, Inc. v. United States Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007)

9   ("[T]his rule applies with equal force to the public interest."). A determination of

10  irreparable harm, balancing of the hardships, or public interest is not necessary at this stage

11  of the proceedings because the Court finds that Plaintiffs have failed to show a likelihood

12  of success on the merits.

13  **III.   Conclusion**

14        IT IS HEREBY ORDERED that the Ex Parte Application for Temporary

15  Restraining Order filed by Plaintiffs Eugene Davidovich, Davina Lynch, and John Kenney

16  (ECF No. 29) is DENIED.

17  DATED:  February 10, 2012

18                                             *William Q. Hayes*
                                        _____
                                        **WILLIAM Q. HAYES**
19                                      United States District Judge

20

21

22

23

24

25

26

27

28